# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE PABON, individually, and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>H&R BLOCK, INC., HRB DIGITAL LLC, and HRB TAX GROUP, INC.<br><br>       Defendants. | Civil Action No.: 2:23-cv-05363<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

MICHELLE PABON ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through undersigned counsel, hereby submits the following Class Action Complaint and Demand for Jury Trial against H&R BLOCK, INC., HRB DIGITAL LLC, and HRB TAX GROUP, INC. (collectively, "Defendants" or "H&R Block") and alleges the following upon information and belief:

## NATURE OF THE ACTION

1. This proposed class action against Defendants seeks damages for actual and imminent or impending injuries as a result of Defendants' unlawful disclosure of Plaintiff's and putative class members' private tax return information. The confidential, private tax return information that was unlawfully disclosed, disseminated, transmitted, and/or released by H&R Block to third parties without the consent of its customers included, but was not limited to, the following information of taxpaying customers: names; health savings account contributions; college tuition grants, scholarships, and educational expenses; and specific pages visited by the customer, including pages related to dependents, certain types of income (e.g., rental income or capital gains), and certain tax credits or deductions. This confidential tax return information

("TRI"), along with other personal identifiers, was unlawfully disclosed, disseminated, transmitted, and/or released by H&R Block to unauthorized third-party advertising platforms.

2.      In or around 2022, H&R Block, along with other major tax preparation software companies, was the subject of an investigation by The Markup, which revealed that H&R Block had been unlawfully utilizing pixels to disclose, disseminate, transmit, and/or release confidential TRI to major tech companies, including Meta and Google.

3.      Subsequently, H&R Block, along with other major tax preparation software companies, was the subject of a congressional investigation regarding the unlawful disclosure, dissemination, transmission, and/or release of customer TRI data to major tech companies, including Meta and Google.

4.      H&R Block is, and at all relevant times was, one of the largest tax preparation companies in the United States. H&R Block has the second largest market share among tax preparation companies.

5.      Since 1955, H&R Block has prepared more than 800 million tax returns worldwide. In 2021, H&R Block's revenue was approximately $3.4 billion dollars.

6.      H&R Block has spent more than $40 million on federal lobbying since 1998, fighting against efforts to make tax filing simpler and cheaper for United States citizens.

7.      H&R Block maintained and operated, and continues to maintain and operate a website, https://www.hrblock.com. Through this website, taxpaying customers, among other things, can utilize H&R Block's tax preparation software to prepare and file federal and state taxes.

8.      In order to utilize H&R Block's tax preparation software, taxpaying customers are required to share sensitive, personal, and confidential TRI with H&R Block.

9.     These taxpaying customers have an expectation of privacy, including that H&R Block will maintain their TRI in a safe and secure manner.

10.     Online tax preparation software systems are the predominant way through which Americans file their taxes.

11.     Tens of millions of Americans use H&R Block to file their taxes each year, entrusting H&R Block with personal, private TRI. Such TRI includes social security numbers and additional, detailed information required by the IRS and New York Tax Board for filing their taxes.

12.     Until on or about November 23, 2022, Plaintiff's TRI was unlawfully transmitted to Meta Platforms, Inc. ("Meta") and Google, both of which were unauthorized third parties. The transmission was effectuated using Meta Pixel, a line of code inserted into the online tax preparation software, or Google Analytics. Such unauthorized sharing of TRI with two of the world's largest tech companies was not known to Plaintiff or putative class members.

13.     H&R Block first implemented the Meta Pixel several years ago.

14.     H&R Block used the Meta Pixel on its website. The Meta Pixel gathered information on, among other things, customers' health savings account usage and dependents' college tuition grants and expenses.

15.     H&R Block also had Google Analytics installed on its website.

16.     H&R Block unlawfully transmitted confidential TRI to third party companies, including Google and Meta, from the time Google Analytics and Meta Pixel were installed on H&R Block's platforms through November 2022, when they were contacted by The Markup.

17.     Upon information and belief, H&R Block did not attempt to forestall or prevent the disclosure, dissemination, transmission, and/or release of customer TRI until after they were approached by The Markup in November 2022. Failure to take action before being contacted

demonstrates a reckless disregard for customer TRI, especially where H&R Block has admitted during the course of the congressional investigation that it did not have any idea what Meta does with the customer TRI data.

18.　　H&R Block's Digital Privacy Notice explains that protecting personal information of its customers is important. It claims that H&R Block will not sell or rent customer's information. It further limits disclosure of personal information to H&R Block companies or third parties to those permitted by law or with consent.

19.　　H&R Block violated its own privacy notice by unlawfully transmitting customer TRI to unauthorized third parties, including, but not limited to Meta and Google, without notice to customers or obtaining customers' consent. H&R Block also permitted third parties that received customer TRI to utilize and profit from the unlawfully information received.

20.　　H&R Block has disclosed, disseminated, transmitted, and/or released to and helped third parties obtain Plaintiff's and putative class members' TRI. Upon information and belief, H&R Block's unlawful actions or inactions have impacted hundreds of thousands, if not millions, of taxpaying customers in the United States and New York State.

21.　　Plaintiff, individually, and on behalf of all others similarly situated, seeks to remedy these injuries, prevent their future occurrence, and, accordingly, asserts the below claims and seeks monetary damages, injunctive relief, declaratory relief, and all other available relief by law or in equity.

## THE PARTIES

### PARTY PLAINTIFF

22.     At all relevant times and currently, Plaintiff has been a United States citizen, residing and domiciled in Nassau County, New York and thus is a citizen of the State of New York.

23.     Plaintiff is a customer of H&R Block and used H&R Block's website to prepare and file her federal and state income taxes for the tax years from 2018 through 2022.

### PARTY DEFENDANTS

24.     Defendant H&R BLOCK, INC. is a publicly traded Missouri corporation with its principal place of business located at One H&R Block Way, Kansas City Missouri 64105.

25.     Defendant HRB DIGITAL LLC ("HRB DIGITAL") is a Delaware limited liability company with its principal place of business in Kansas City, Missouri.

26.     Defendant HRB TAX GROUP, INC ("HRB TG") is a Missouri corporation, having its principal place of business at One H&R Block Way, Kansas City Missouri 64105.

27.     Upon information and belief, H&R BLOCK, INC. is the parent company of Defendants HRB DIGITAL and HRB TG and HRB DIGITIAL and HRB TG are wholly owned subsidiaries of H&R BLOCK, INC.

28.     Upon information and belief, H&R BLOCK, INC. and HRB DIGITAL collectively own and control a series of at least twenty-four (24) widely used electronic tax preparation and filing software products and services, including those offered through https://www.hrblock.com.

29.     Upon information and belief, HRB TG is responsible for overseeing and implementing H&R Block's online tax filing products.

30.     With respect to the allegations herein, each of the Defendants was each other's agent and, in doing the things herein alleged, was acting within the scope and course of its authority as such agent.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for both the Nationwide Class and the New York Subclass (as defined below) exceeds $5,000,000.00 exclusive of interest and costs, there are more than 100 members of each putative class, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of Defendants.

32.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, i.e., the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

33.     This Court has personal jurisdiction over Defendants because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this state. Defendants offer and market their services to New York residents, including Plaintiff, and permit customers to prepare and file New York state tax returns.

34.     Furthermore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events giving rise to this action occurred in this District; a

substantial part of property that is subject of the action is situated in this District; and because

Defendants transact substantial business generally in this District.

**FACTUAL ALLEGATIONS**

**A.      H&R Block is a Tax Return Preparer Under the Law.**

35.      Treasury Regulation, 26 C.F.R. § 301.7216-1 – Penalty for disclosure or use of TRI

– broadly defines "[t]ax return preparer" [at (b)(2)] as "[a]ny person who is engaged in the business

of preparing or assisting in preparing tax returns," including "[a]ny person who is engaged  in the

business of providing auxiliary services in connection with the preparation of tax returns, *including*

*a person who develops software that is used to prepare or file a tax return* and any Authorized

IRS e-file Provider…" Accordingly, H&R Block is a "tax return preparer" under this regulation.

36.      At all relevant times, H&R Block provided tax preparation services as a tax return

preparer under the law.

37.      At all relevant times, H&R Block maintained and operated online tax preparation

software through https://www.hrblock.com and mobile platforms for the purpose of electronic tax

filing. Plaintiff and other putative class members utilized H&R Block's online tax preparation

software to prepare and file federal and state income tax returns.

38.      At all relevant times, in utilizing H&R Block services, individuals had the option

to create an H&R Block account. Creating an account required an individual to provide an email

address and phone number, along with a username and password. If users choose not to create an

account they can choose "Create account later" and will be taken to a page forcing them to accept

H&R Block's license agreement and privacy policy, inclusive of its Electronic Communications

Consent, its Online Services Agreement, and its H&R Block Privacy Notice.

39.     In short, in order to utilize H&R Block's tax preparation software for the purpose of preparing and filing federal and state income tax returns, taxpaying customers were forced to disclose confidential TRI to H&R Block – confidential TRI over which customers had an expectation of privacy.

40.     H&R Block was also subject to substantially similar New York State laws, including Section 32(14) of the New York Consolidated Laws. *See* Count II, *infra*. H&R Block is a tax return preparer per same.

**B.     H&R Was Subject to And Violated Federal and State Statutes.**

41.     Pursuant to 26 C.F.R. § 301.7216-1(b)(3) term "tax return information" means "any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer." This includes information that "the taxpayer would not have furnished … to the tax return preparer but for the intention to engage … the tax return preparer to prepare the tax return." 26 C.F.R. § 301.7216-1(b)(3)(D). As such, any information a taxpayer provides to a tax preparation company like H&R Block is considered TRI.

42.     "Use" of TRI is defined, by 26 C.F.R. § 301.7216-1(b)(4), to include "any circumstance in which a tax return prepare refers to, or relies upon, TRI as the basis to take or permit an action."

43.     "Disclosure" of TRI is defined, by 26 C.F.R. § 301.7216-1(b)(5), as "the act of making TRI known to any person in any manner whatever."

44.     Given the broad definitions set forth in 26 C.F.R. § 301.7216-1 *et seq*. – intended to provide the taxpayer maximum protection – H&R Block's disclosure, dissemination, transmission, and/or release of customers' TRI to major tech corporations constitutes a disclosure

under the regulations. Likewise, the use of such information by Meta and Google – among possible others – constitutes a use of TRI.

45.     H&R Block was also subject to substantially similar New York State laws, including 20 CRR-NY 2600-5.1(L) of the New York Consolidated Laws. *See* Count II, *infra*. H&R Block violated same.

**C.     H&R Block Violated its Own Privacy Policy and Secretly Disclosed, Disseminated, Transmitted, and/or Released Plaintiff's and Putative Class Members' Confidential TRI to Third Parties Without Obtaining Taxpayer Consent.**

46.     H&R Block did not obtain valid consent for its disclosure of confidential customer TRI data to Meta and Google. To utilize H&R Block's online services, a customer must agree to its license agreement and privacy policy, inclusive of H&R Block's Electronic Communications Consent, its Online Services Agreement, and its H&R Block Privacy Notice.

47.     H&R Block's Privacy Notice explains what kind of information about customers it collects, as well as where it gets the information. The notice also states that H&R Block may disclose customer information as permitted by law or with customer consent to other H&R Block companies or to third parties with whom H&R Block has a written contract limiting the use and disclosure of customer information.

48.     H&R Block's notice further claims that data shared for tailored advertising is made pseudonymous and that it does not share customer information with third parties for their marketing purposes without customer consent or without providing customers the opportunity to opt out of such sharing.

49.     The H&R Block Privacy Notice did not, at all relevant times, meet IRS regulatory requirements. H&R Block did not disclose that gathered information would include TRI. The disclosure agreement did not list any of the recipients of customers' TRI, such as Meta or Google,

nor did it list such companies as recipients of confidential TRI. In addition, H&R Block's disclosure did not give the taxpayer the opportunity or ability to request a more limited disclosure of their TRI. Accordingly, H&R Block did not obtain valid consent from taxpaying customers prior to disclosing, disseminating, transmitting, and/or releasing TRI to third party companies.

50. Taxpaying customers could not possibly know or expect that such disclosures of their highly confidential and personal TRI might occur.

51. H&R Block was not authorized to disclose TRI without consent from its customers. Treasury regulation 26 C.F.R. § 301.7216-2 – Permissible disclosures or uses without consent of the taxpayer – describes specific instances when a tax return preparer, such as H&R Block, is permitted to disclose TRI absent taxpayer consent.

52. Pursuant to 26 C.F.R. § 301.7216-2(d), a tax return preparer may share TRI to another tax return preparer or an auxiliary service provider. Neither Meta nor Google qualify as tax return preparers. Likewise, neither Meta nor Google qualify as an auxiliary service provider. As such, H&R Block was not permitted to disclose, disseminate, transmit, and/or release customers' TRI to third party companies, including Meta and Google, without consent.

53. In the course of a congressional investigation, H&R Block admitted that the default settings of the Meta Pixel allowed the third-party tech company to collect information, including page title information. The information collected involved a subset of information related to the customers' tax situation, including the first name of the taxpayer and aggregate amounts relating to HAS contributions, scholarships, and education expenses. In addition, the Meta Pixel disclosed, disseminated, transmitted, and/or released information regarding page headers for various categories of TRI, such as dependents, types of income, and tax credits or deductions.

54. The TRI H&R Block disclosed, disseminated, transmitted, and/or released to third parties, including Meta and Google, was not truly anonymous, as these companies had the ability to – at minimum – indirectly associate the information with a particular taxpayer.

**D.     H&R Block Unlawfully Disclosed, Disseminated, Transmitted, and/or Released Plaintiff's and Putative Class Members' Confidential TRI to Third Parties, Including Meta and Google, Using Pixels.**

55. At all relevant times and until on or about November 23, 2022, Plaintiff's TRI was unlawfully transmitted to Meta and Google, both of which were unauthorized third parties. The transmission was effectuated using pixels, including Meta Pixel and/or Google Analytics. Such unauthorized sharing of TRI with two of the world's largest tech companies was not known to Plaintiff or putative class members.

56. Pixels are a computer code that enables the user to send personal information to the company, e.g., Meta or Google. In this case, the personal information included taxpaying customers' TRI.

57. Meta Pixel and Google Analytics are a line or lines of code that were inserted into the online tax preparation software. Upon information and belief, these pixels were utilized by H&R Block.

58. Meta and Google pixels, once placed on a website, download additional code from Meta and Google, which enables the disclosure, dissemination, transmission, and/or release of information – in this case, taxpaying customers' TRI. It allows companies like Meta and Google to understand user behavior and tailor advertising efforts.

59. Companies, like Meta and Google, use this data to, among other things, target ads and train their own artificial intelligence algorithms.

60. The Meta Pixel came out in 2015.

61.     The Meta Pixel is given to companies to install, along with instructions. Meta Pixel utilizes cookies - specifically c_user cookies – which are unique to each user and allow for identification of users' platforms. Once Meta Pixel is installed on a website, collection of user information and disclosure, dissemination, transmission, and/or release of that information to Meta begins.

62.     Meta Pixel enables Meta to receive real-time logs of users' actions on third-party websites, like H&R Block. The information collected can be, and is, attributed to individual users.

63.     Meta provides marketing partners with insight into user activity, allowing them the ability to track visitor actions, define audiences, and create "lookalike" audiences to tailor advertisements.

64.     Google's pixel, part of its Google Analytics product, is similar to the Meta Pixel. It is a code that the customer, like H&R Block, installs on their website. Customers can allow Google to use data for Google's own purposes.

65.     Meta and Google utilize information obtained through its pixels – such as the TRI obtained from H&R Block – for their own purposes.

66.     The information obtained is provided to advertising partners, enabling them to target specific advertisements to certain customers.

67.     Tech companies, like Meta and Google, also utilize this information for its own purposes, optimizing its algorithms.

68.     Tech companies, like Meta and Google, utilize c_user cookies to expand user dossiers.

69.     Upon information and belief H&R Block profited from its unlawful and improper sharing of Plaintiff's and other taxpayer's TRI with companies like Meta and Google.

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS, CONCEALMENT, AND ESTOPPEL

70.     Each unauthorized transmission of Plaintiff's and Class Members' Confidential TRI by Defendants constitutes a separate act that triggers anew the relevant statute of limitations.

71.     Additionally, any applicable statutes of limitation have been tolled by (1) the delayed discovery doctrine, as Plaintiff and Class Members did not and could not — through no fault or lack of diligence — reasonably have discovered Defendants' conduct alleged herein until shortly before the filing of this Complaint; and (2) the fraudulent concealment doctrine due to Defendants' knowing, purposeful, and active concealment and denial of all facts alleged herein including but not limited to the incorporation of the tracking pixels and devices and the impermissible sharing of taxpayer TRI.

72.     Defendants had exclusive knowledge that its website(s) incorporated the Meta Pixel, Google's pixels, and other tracking tools and failed to disclose to website users, including Plaintiff and Class Members, that by using Defendants' website(s) their Confidential TRI would be disclosed to, released to, or intercepted by Meta and Google.

73.     Under the circumstances, Defendants had a duty to disclose the nature, significance, and consequences of their collection and treatment of visitor's and customer's Confidential TRI. In fact, to the present Defendants have not conceded, acknowledged, or otherwise indicated to their customers and other website visitors that they have disclosed or released their confidential TRI to unauthorized third parties. Accordingly, Defendants are estopped from relying upon any statute of limitations.

## <u>CLASS ACTION ALLEGATIONS</u>

74.     Pursuant to Fed. R. Civ. P. 23, Plaintiff and the members of the proposed classes

seek certification of the following Nationwide Class and New York State Subclass of similarly

situated persons:

### NATIONWIDE CLASS

**All natural persons residing in the United States ("Nationwide Class") who used H&R Block's tax preparation software to prepare and/or file a tax return since H&R Block began impermissibly sharing taxpayer TRI with third parties through November 23, 2022.**

### NEW YORK SUBCLASS

**All natural persons residing in the State of New York ("New York Subclass") who used H&R Block's tax preparation software to prepare and/or file a tax return since H&R Block began impermissibly sharing taxpayer TRI with third parties through November 23, 2022.**

75.     Plaintiff reserves the right to modify or amend the proposed Nationwide Class and

New York Subclass (together, "Class Members") definitions, including, but not limited to, adding

additional subclasses as necessary.

76.     Excluded from proposed classes are Defendants, any entity or entities in which

Defendants' have a controlling interest, Defendants' officers, directors, legal representatives,

successors, subsidiaries, and assigns.

77.     Also excluded from the Nationwide Class and New York Subclass are any judicial

officer presiding over this matter, members of their immediate family, and members of their

judicial staff.

78.     All members of the proposed classes are readily ascertainable in that H&R Block

has access to identificatory or contact information of those individuals affected and who would be

included in any class or subclass definitions, which can be used to provide notice to potential class members.

79.     The proposed classes are so numerous that joinder of all members is impracticable. The exact number and identification of proposed class members are presently unknown to Plaintiff, but upon information and belief, all proposed classes include, at least, tens of thousands – and potentially over millions – of individuals given the size and scope of H&R Block's market share as it pertains to tax preparation software.

80.     Plaintiff's claims are typical of the Nationwide Class and New York Subclass, having used H&R Block's tax preparation software to prepare and file tax returns during the relevant time period — since H&R Block began impermissibly sharing taxpayer TRI with third parties through November 23, 2022.

81.     Common questions of fact and law exist as to all members of the proposed classes, which predominate over any questions affecting only individual members to the proposed classes, including:

    a.   Whether H&R Block's acts or omissions harmed Plaintiff and putative class members;

    b.   Whether H&R Block failed to implement and maintain adequate and reasonable security measures to protect the TRI of Plaintiff and the members of the proposed classes;

    c.   Whether H&R Block's acts or omissions violated customers' privacy rights;

    d.   Whether H&R Block owed a duty to Plaintiff and the members of the proposed class and subclass to adequately protect their TRI;

    e.   Whether H&R Block breached its duty to protect the TRI of Plaintiff and the members of the proposed class and subclass by failing to provide adequate and reasonable security;

f.  Whether H&R Block wrongfully or unlawfully failed to provide adequate and reasonable security measures;

g.  Whether Plaintiff and the members of the proposed class and subclass suffered statutory or actual injuries, including ascertainable losses, as a result of H&R Block's acts or omissions;

h.  Whether Plaintiff and the members of the proposed class and subclass suffered injuries, including statutory, imminent or impeding harm, or enhanced risk of injury, as a result of H&R Block's acts or omissions;

i.  Whether H&R Block violated New York Consolidated Laws, Tax Law – Tax §§ 32 and 20 CRR-NY 2600-5.1;

j.  Whether H&R Block violated 26 U.S.C. §§ 7431 and 6103;

k.  Whether H&R Block violated The Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510;

l.  Whether H&R Block violated New York Penal Law § 250.00;

m.  Whether H&R Block violated New York Penal Law § 156.05;

n.  Whether H&R Block violated New York Penal Law § 155.05;

o.  Whether H&R Block violated New York General Business Laws § 349;

p.  Whether Plaintiff and the members of the proposed class and subclass are entitled to recover damages, punitive damages, attorney fees, costs, and interest; and

q.  Whether Plaintiff and the members of the proposed class and subclass are entitled to equitable relief, including restitution, injunctive relief, declaratory relief, or other equitable relief.

82.   Plaintiff is an adequate representative of the members of the proposed class and subclass because her interests do not conflict with the interests of the members of the proposed class and subclass she seeks to represent; she is represented by experienced and able counsel who have litigated numerous other fraud, negligence, complex litigation, and mass tort actions, and

intend to prosecute this action vigorously for the benefit of the entire proposed class and subclass; and she and her counsel will fairly and adequately protect the interest of the members of the proposed class and subclass.

83.    Furthermore, a class action is superior to other available methods for the adjudication of this litigation since individual litigation of the claims of Plaintiff and the members of the proposed class and subclass is impracticable. It would be unduly burdensome to the courts in which the many thousands of individual actions would proceed. Also, individual litigations would present a potential for inconsistent or contradictory judgments, and inevitably increase the delay and expense to all parties and the courts in resolving the legal and factual issues of these cases.

84.    By contrast, the class action, as a device for the adjudication of the claims asserted herein, presents far fewer managerial difficulties while providing the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**CAUSES OF ACTION**
**COUNT I**

**INVASION OF PRIVACY**

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

85.    Plaintiff, individually, and on behalf of the Nationwide Class and New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

86.    H&R Block's secret disclosure of Plaintiff's and Class Members' Confidential TRI, such as each respective user's personal contact §information, filing status, refund amounts, and number of dependents – constitutes an intentional intrusion upon Plaintiff's and Class Members'

private matters. These private matters were intended to remain private from third parties and Plaintiff and Class Members had an expectation of same.

87.     Plaintiff and Class Members had a reasonable expectation of privacy in their Confidential TRI. Plaintiff, Nationwide Class, and New York Subclass Members, did not authorize, consent to, or have any reason to know about H&R Block's intrusion into their privacy at the time the intrusion occurred.

88.     H&R Block's intrusion into Nationwide Class Members, and New York Subclass Members' private affairs, seclusion, and solitude, would be highly offensive to a reasonable person.

89.     Plaintiff, Nationwide Class, and New York Subclass Members expected that the confidential TRI they shared with a H&R Block, would not be disclosed to an unauthorized third party. Industry standards and social norms inform the understanding that private information, including personal information, financial information, and TRI, is highly protected. Disclosure of such information to third parties requires authorization and consent. The secret disclosure of confidential TRI would be highly offensive to a reasonable person.

90.     Plaintiff, Nationwide Class Members, and New York Subclass Members have suffered harm as a result of H&R Block's actions, including, but not limited to, an invasion of their privacy rights.

91.     Plaintiff, Nationwide Class Members, and New York Subclass Members seek appropriate relief for their injuries, including, but not limited to, monetary damages to compensate them for the harm of their privacy interests and disgorgement of profits made by H&R Block as a result of its intrusions into Plaintiff's, Nationwide Class Members', and New York Subclass Members' private matters.

92. Plaintiff, Nationwide Class Members, and New York Subclass Members are entitled to punitive damages resulting from the malicious, willful, and intentional nature of H&R Block's actions. These actions were directed at invading Plaintiff's Nationwide Class Members', and New York Subclass Members' privacy rights in conscious disregard of those rights. Such damages are deemed necessary to deter H&R Block from engaging in similar conduct in the future.

93. If successful, this action will enforce an important right affecting the public interest and would confer a significant benefit on a large class of persons and/or general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seek the recovery of attorneys' fees and costs in prosecuting this action against H&R Block under applicable law.

94. Plaintiff, on behalf of herself, The Nationwide Class, and the New York Subclass request relief as further described below.

## **COUNT II**

## **VIOLATION OF NEW YORK CONSOLIDATED LAWS, TAX LAW – TAX § 32 AND 20 CRR-NY 2600-5.1**

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

95. Plaintiff, individually, and on behalf of the Nationwide Class and New York Subclass, re-allege and incorporate by reference every allegation that is set forth in the preceding paragraphs as if fully set forth herein.

96. 20 CRR-NY 2600-5.1(L) provides that a tax return prepare may be sanctioned for:

> Willfully or recklessly disclosing or otherwise using a tax return or tax return information in a manner not authorized by Federal or State law or otherwise disclosing confidential information obtained in the course of a professional engagement unless such disclosure was with the consent of the client, in the course of dealing with tax

19

authority, as required by law, or otherwise permitted under relevant professional standards.

97.     Section 32(14) of the New York Consolidated Laws, Tax Law provides:

> "Tax return preparer" means an individual who prepares a substantial portion of any return for compensation. Employees of a tax return preparer or a commercial tax return preparation business who prepare returns for clients of that preparer or preparation business, as applicable, and partners who prepare returns for clients of a partnership engaged in a commercial tax return preparation business, are all "tax return preparers" for purposes of this section. Excluded from the definition of "tax return preparer" are attorneys, public accountants, enrolled agents, and certified public accountants, and employees of an attorney, public accountant, enrolled agent, certified public accountant, or firm thereof preparing returns under the supervision of such attorneys, public accountants, certified public accountants and enrolled agents or firms thereof. Also excluded are volunteer tax preparers, employees of a business or partners in a partnership whose job responsibilities include preparation of only the business' or partnership's returns, and employees of a tax return preparer or a commercial tax return preparation business who provides only clerical or other comparable services.

98.     H&R Block is, and at all relevant times has been an "individual who prepares a substantial portion of any return for compensation" within the meaning of § 32(14) of the New York Tax Law.

99.     H&R Block, routinely disclosed information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns to, at minimum, Meta and Google without the consent of its clients, without being in the course of dealing with the tax authority, without that disclosure being required by federal or state law, and without being permitted under any other relevant laws or professional standards.

100.    Resulting from H&R Block's unlawful conduct alleged herein, Plaintiff has lost money and/or property. Plaintiff has also suffered injury in fact. Had Plaintiff known of H&R

Block's unlawful conduct, she would not have paid money to H&R Block and used its website to prepare tax returns.

101. As a direct proximate result of H&R Block's conduct, H&R Block has received and continues to hold unlawfully obtained property and money. H&R Block has also profited from its unlawful acts as alleged herein.

102. Pursuant to 20 CRR-NY 2600-5.1(L), Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass, seek restitution and disgorgement of all earnings, profits, compensation, and benefit obtained by H&R Block as a result of the unlawful practices described herein in violation of 20 CRR-NY 2600-5.1(L).

103. Plaintiff has taken on the responsibility of enforcing the laws and public policies specified herein by suing on their own behalf and on behalf of other similarly-situated class members. Plaintiff will incur a financial burden in pursing this action in furtherance of the public interest, and because of this an award of attorneys' fees to Plaintiff is appropriate pursuant to applicable law.

104. Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass seek relief as further described below.

**COUNT III**

**VIOLATION OF 26 U.S.C. § 7431 AND § 6103**

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

105. Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

106. The general rule stated in 26 U.S.C. § 6103(a) provides that, "returns and return information shall be confidential…"

107. In addition, 26 U.S.C. § 6103(b)(2) provides that, "the term return information means a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments…"

108. In addition, 26 U.S.C. § 7431(a)(2) provides that, "inspection or disclosure by a person who is not an employee of United States.--If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States…"

109. H&R Block is considered "not an employee of the United States" under 26 U.S.C. § 7431(a)(2).

110. H&R Block, either knowingly or by reason of negligence, disclosed return information about Plaintiff, Nationwide Class Members, and New York Subclass Members in violation of 26 U.S.C. § 7431(a)(2).

111. Plaintiff seeks all relevant damages from H&R Block's violation of the statute described herein.

112. Plaintiff, on behalf of herself, the Nationwide Class Members, and the New York Subclass Members seek relief as further described below.

## COUNT IV

### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA), 18 U.S.C. § 2510

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

113.     Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth therein.

114.     The ECPA, 18 U.S.C. § 2510, makes it unlawful for a "person" to "intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

115.     Under 18 U.S.C. § 2510(8), "intercept" is defined as "including any information concerning the substance, purport, or meaning of that communication."

116.     Under 18 U.S.C. § 2510(6), "person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation."

117.     Under 18 U.S.C. § 2510(12), "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…"

118.     Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications with H&R Block were electronic communications within the meaning of Under 18 U.S.C. 2510(12). Plaintiff, Nationwide Class Members, and New York Subclass Members used H&R Block's website and H&R Block's tax preparation services to prepare tax returns and thereby communicated confidential personal and financial information with H&R Block.

119.     Meta, Google, and H&R Block are classified as persons within the meaning of the ECPA because they are corporations.

120.     Under 18 U.S.C. § 2510(4), the Meta Pixel tracker is a "device or apparatus" that is "used to intercept a wire, oral, or electronic communication."

121.     Under 18 U.S.C. § 2510(4), Google's tracking pixels are each a "device or apparatus" that is "used to intercept a wire, oral, or electronic communication."

122.     By incorporating the Meta Pixel and Google's tracking pixels into its website and permitting Meta and Google, and any other unauthorized third parties to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' confidential personal and financial information, H&R Block intercepted or endeavored to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications and/or produced Meta and Google, and other unauthorized third parties to intercept or endeavor to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications, in violation of the ECPA.

123.     18 U.S.C. § 2511(2)(d) provides an exception to 18 U.S.C. § 2511(1), under which: "It shall not be unlawful under 18 U.S.C. § 2510 for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.*" (emphasis added).

124.     Neither Plaintiff, Nationwide Class Members, or New York Subclass Members consented to H&R Block's interception of, or to H&R Block procuring Meta and Google, and

other unauthorized third parties to intercept, their electronic communications with H&R Block through H&R Block's website.

125.     H&R Block does not meet the requirements of the "party exception" to the ECPA because the electronic communications intercepted by H&R Block, or which H&R Block procured Meta and Google, and other unauthorized third parties to intercept, were intercepted as part of H&R Block's practice of divulging confidential personal information and financial information to unauthorized third parties in violation of numerous federal and state laws.

126.     As detailed above, H&R Block violated 20 CRR-NY 2600-5.1(I), the Official Compilation of Codes, Rules and Regulations of the State of New York, New York Consolidated Laws - Tax Law, and committed a tortious invasion of privacy, when it disclosed Plaintiff's, Nationwide Class Members', and New York Subclass Members' confidential personal and financial information to Meta through the Meta Pixel.

127.     Moreover, as described below, H&R Block violated the New York Penal Law § 156.05.  H&R Block's violations of the New York Penal Law § 156.05 is punishable by fines and/or imprisonment. Additionally, as described below, H&R Block committed larceny in violation of Penal Code section § 155.05.

128.     Based on information and belief, H&R Block violated numerous other federal and state statutes when it intercepted or endeavored to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications and/or procured Meta and Google, and other unauthorized third parties to intercept or endeavor to intercept Plaintiff's, Nationwide Class Members', and New York Subclass Members' electronic communications.

129.     Accordingly, H&R Block violated the ECPA each time the Meta Pixel or Google's tracking pixels incorporated into its website intercepted Plaintiff's, Nationwide Class Members', New York Subclass Members' electronic communications.

130.     Pursuant to 18 U.S.C. § 2520, Plaintiff, Nationwide Class Members, New York Subclass Members have been damaged by the interception and disclosure of their electronic communications in violation of the ECPA and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff, the Nationwide Class, and the New York Subclass and any profits made by H&R Block as a result of its violations, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

131.     Plaintiff, on behalf of herself, the Nationwide Class, and New York Subclass seek relief as further described below.

**COUNT V**

**VIOLATION OF NEW YORK PENAL LAW § 250.00**

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

132.     Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

133.     The New York Penal Law § 250.05 states, "a person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication. Eavesdropping is a class E felony."

134.     The New York Penal Law § 250.00 (5) electronic communication as, "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole

or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system, but does not include: (a) any telephonic or telegraphic communication; or (b) any communication made through a tone only paging device; or (c) any communication made through a tracking device consisting of an electronic or mechanical device which permits the tracking of the movement of a person or object; or (d) any communication that is disseminated by the sender through a method of transmission that is configured so that such communication is readily accessible to the general public."

135.    H&R Block is classified as a "person" within the meaning of The New York Penal Law § 250.05.

136.    Plaintiff's, Nationwide Class Members', and New York Subclass Members' communications of Confidential TRI with H&R Block on and through H&R Block's website were intended to be kept confidential to the parties. Plaintiff, Nationwide Class Members, and New York Subclass Members were using H&R Block's secure website. Plaintiff, Nationwide Class Members, and New York Subclass members understood H&R Block's website to be secure and no indication was given that their personal information and Confidential TRI would be shared with or viewed by any unauthorized third party. The circumstances reasonably indicate that Plaintiff, Nationwide Class Members, and New York Subclass Members desired their communications with H&R Block to be confined to the parties thereto.

137.    Despite not having any authorization from Plaintiff, Nationwide Class Members, or New York Subclass Members, H&R Block aided, agreed with, and/or conspired with Meta and Google to permit them to intercept these communications and to learn the content of those communications while in transit or in the process of being sent or received.

138.     H&R Block's conduct, as described above, violated the New York Penal Law §
250.00.

139.     Plaintiff, on behalf of herself, the Nationwide Class Members, and the New York
Subclass Members seek relief as further described below.

## COUNT VI

## VIOLATION OF NEW YORK PENAL LAW § 156.05

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

140.     Plaintiff, individually, and on behalf of the Nationwide Class, and New York
Subclass incorporate the foregoing allegations as if fully set forth herein.

141.     New York Penal Law § 156.05 provides that, "a person is guilty of unauthorized
use of a computer when he or she knowingly uses, causes to be used, or access a computer,
computer service, or computer network without authorization. Unauthorized use of a computer is
a class A misdemeanor." H&R Block violated New York Penal Law § 156.05 when it: (i) knew
Meta and other third parties, without permission, were accessing Plaintiff's, Nationwide Class
Members', and New York Subclass Members' computers, mobile phones, tablets, or other devices
in order to wrongfully obtain and use their personal data, including their Confidential TRI, in
violation of Plaintiff's, Nationwide Class Members', and New York Subclass Members'
reasonable expectations of privacy in their devices and data, in violation of New York Penal Law
§ 156.05; (ii) helped Meta and other third parties in accessing, taking, copying, and using
Plaintiff's, Nationwide Class Members, and New York Subclass Members' personally identifiable
information, including their Confidential TRI, in violation of New York Penal Law § 156.05.

142.     H&R Block violated New York Penal Law § 156.05 when it incorporated the Meta
Pixel and other tracking devices into its website and when it configured the Meta Pixel and other

third-party trackers to disclose Plaintiff's, Nationwide Class Members', and New York Subclass Members' Confidential TRI and other personal information to Meta and other third parties, thereby causing Meta and other third parties to access Plaintiff's, other Nationwide Class Members', and other New York Subclass Members' computers and devices without permission.

143.     Plaintiff, Nationwide Class Members, and New York Subclass Members suffered damage and loss as a result of H&R Block's conduct. H&R Block's practices have deprived Plaintiff, Nationwide Class Members, and New York Subclass Members of control over their valuable property, the ability to receive compensation for that data, and the ability to withhold their data for sale.

144.     Plaintiff, Nationwide Class Members, and New York Subclass Members seek compensatory damages in accordance with applicable law, in an amount to be proven at trial, and injunctive or other equitable relief.

145.     Plaintiff, Nationwide Class Members, and New York Subclass Members have also suffered irreparable and incalculable harm and injuries from H&R Block's violations. Plaintiff, Nationwide Class Members, and New York Subclass Members have no adequate remedy at law.

146.     Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass request further relief as described below.

**COUNT VII**

**VIOLATION OF NEW YORK PENAL LAW § 155.05**

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

147.     Plaintiff, individually, and on behalf of the Nationwide Class, and the New York subclass, incorporate the foregoing allegations as if fully set forth herein.

148.    New York Penal Law § 155.05(1) provides, "a person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof."

149.    New York Penal Law § 155.05(2)(a) provides, "Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed by conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses."

150.    Under New York law, Plaintiff's, Nationwide Class Members', and New York Subclass Members' private data constitutes property that can be the subject of larceny.

151.    H&R Block acted in a manner that is constituted as larceny by taking Plaintiff's, Nationwide Class Members', and New York Subclass Members' Confidential TRI through Advertising Platform pixels and trackers on its website, with the intent to deprive Plaintiff, Nationwide Class Members, and New York Subclass Members of their property.

152.    Plaintiff, Nationwide Class Members, and New York Subclass Members did not consent to any of H&R Block's actions in taking Plaintiff's, Nationwide Class Members', and New York Subclass Members' private data.

153.    Pursuant to New York Penal Law § 155.05, Plaintiff's, Nationwide Class Members', and New York Subclass Members are entitled to damages, as well as attorneys' fees and costs, for injuries sustained as a result of H&R Block's violations of New York Penal Law § 155.05.

154.    Plaintiff, on behalf of herself, the Nationwide Class Members, and the New York Subclass Members, request further relief as described below.

## COUNT VIII

## VIOLATION OF NEW YORK GENERAL BUSINESS LAWS § 349

*On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.*

155.    Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

156.    The New York General Business Laws § 349(a) provides, "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

157.    H&R Block's omissions, practices, and non-disclosures as alleged herein constituted deceptive practices in the conduct of business within the meaning of the New York General Business Laws § 349.

158.    H&R Block engaged in unlawful and deceptive business acts or practices as set forth above. This includes violations of New York General Business Laws § 349, New York Penal Law § 155.05, New York Penal Law § 156.05, New York Penal Law § 250.00, The ECPA, 18 U.S.C § 2510, New York Consolidated Laws, Tax Law – TAX § 32, and 20 CRR-NY 2600-5.1.

159.    Plaintiff reserves the right to allege other violations of law that were committed by H&R Block that constitute unlawful and deceptive business acts or practices within the meaning of the New York General Business Laws.

160.    Had Plaintiff, Nationwide Class Members, and New York Subclass Members known that their Confidential TRI would be disclosed or released by H&R Block to unauthorized third parties, they would not have shared their personal and financial information with H&R Block's website or would not have used H&R Block's website. Had Plaintiff, Nationwide Class Members, and New York Subclass Members known that their Confidential TRI would be disclosed

or released by H&R Block to unauthorized third parties, they would not have used H&R Block's website to complete tax returns.

161.    Plaintiff, Nationwide Class Members, and New York Subclass Members suffered injury in fact and lost money or property as a result of H&R Block's acts and practices in that a portion of any money Plaintiff, Nationwide Class Members', and New York Subclass Members paid for H&R Block's services went to fulfill H&R Block's obligations with respect to the confidentiality and security of Plaintiff's, Nationwide Class Members, and New York Subclass Members Confidential TRI, and H&R Block failed to fulfill those obligations. The loss of money and/or property includes the unauthorized collection of Plaintiff's, Nationwide Class Members', and New York Subclass Members' Private Data, which has value in an amount to be proven at trial. Moreover, Plaintiff, Nationwide Class Members, and New York Subclass Members have suffered harm in the form of diminution of the value of their Confidential TRI and other private data.

162.    The actions of H&R Block's resulted in damage to and loss of Plaintiff's, Nationwide Class Members', and New York Subclass Members' property right to control the dissemination and use of their Private Data.

163.    H&R Block has taken property from Plaintiff's, Nationwide Class Members', and New York Subclass Members' without providing any, or just, compensation to Plaintiff's, Nationwide Class Members', and New York Subclass Members'.

164.    H&R Block should be required to cease its illegal and/or unfair collection of user data and be required to retrieve and delete all illegally and/or unfairly obtained user data. H&R Block reaped unjust profits and revenues in violation of the New York General Business Laws.

165.	Plaintiff, Nationwide Class Members, and New York Subclass Members also suffered injury in fact as a result of H&R Block's acts and practices since they paid more for H&R Block's services than they otherwise would have had they known H&R Block was disclosing their Confidential TRI to unauthorized third parties in violation of its legal obligations, social norms, and reasonable consumer expectations.

166.	Plaintiff, Nationwide Class Members, and New York Subclass Members have also suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of: (i) invasion of privacy; (ii) breach of the confidentiality of their Confidential TRI; and/or (iii) deprivation of the value of their Confidential TRI for which there is a well-established national and international market.

167.	Plaintiff also seek restitution on behalf of herself, the Nationwide Class members, and the New York Subclass Members.

168.	Plaintiff, Nationwide Class Members, and the New York Class Members lack an adequate remedy at law because the ongoing harm from H&R Block's interception, collection, taking, possession, and use of Confidential TRI must be addressed by injunctive relief. Due to the ongoing and nature of the harm, the harm cannot be adequately addressed alone by monetary damages.

169.	This action if successful, will enforce an important right affecting the public interest and would confer a significant benefit on a large-scale class of persons and/or general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter. Since this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seek the recovery of attorneys' fees and costs in prosecuting this action against H&R Block pursuant to applicable law.

170.     Plaintiff, on behalf of herself, the Nationwide Class, and the New York Subclass seek relief as further described below.

## COUNT IX

## NEGLIGENCE

***On Behalf of Plaintiff, the Nationwide Class, and New York Subclass.***

171.     Plaintiff, individually, and on behalf of the Nationwide Class, and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

172.     Defendants owed a duty to Plaintiff and the members of the Nationwide Class and the New York Subclass to exercise reasonable care in gathering, possessing, storing, organizing, and maintaining their TRI and preventing it from being provided to unauthorized third parties, including Meta and Google.

173.     Defendants had a common law duty to prevent foreseeable harm to Plaintiff and the members of the Nationwide Class and the New York Subclass because they were the foreseeable and probable victims of Defendants' improper disclosure of their impermissible sharing of confidential tax payer TRI with unauthorized third parties, including Meta and Google.

174.     Defendants' duty also arose from their unique position as one of the largest tax preparation service providers in the United States that routinely engages in the collection of highly sensitive personal TRI. A service that requires the utmost trust of users given the nature of the data being provided.

175.     Defendants furthermore held themselves out as trusted stewards and custodians of the TRI of its users, and thereby assumed a duty to reasonably protect their TRI.

176.     Defendants breached their duties owed to Plaintiff and the members of the Nationwide Class, and the New York Subclass by impermissibly sharing their TRI with unauthorized third parties without their knowledge or consent.

177.     But for Defendants' wrongful and negligent breach of its duties owed to Plaintiff and the members of the Nationwide Class, and the New York Subclass their TRI data would not have been compromised.

178.     Plaintiffs on behalf of themselves, the Nationwide Class Members, and the New York Subclass Members, request further relief as described below.

**COUNT X**

**NEGLIGENCE *PER SE***

179.     Plaintiff, individually, and on behalf of the Nationwide Class and the New York Subclass, incorporate the foregoing allegations as if fully set forth herein.

180.     Defendants violated numerous federal and New York state statutes through their impermissible disclosure of Plaintiff's and the members of the Nationwide Class and the New York Subclass' private TRI data without their consent, as described above.

181.     Defendants' violation of these statutes constitutes negligence *per se*.

182.     Plaintiff on behalf of herself, the Nationwide Class Members, and the New York Subclass Members, request further relief as described below

WHEREFORE, Plaintiff and the members of the proposed Nationwide Class and New York Subclass demand judgment against Defendants, jointly and severally, for declaratory relief, injunctive relief, damages and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of the proposed classes, demands judgment against Defendants, jointly and severally, for damages to which she and all other similarly situated individuals are entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, including:

a. That the Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class and subclass representative; and appoint Plaintiff's counsel as Class Counsel;

b. That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

c. That the Court award Plaintiff and the Nationwide Class and New York Subclass compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

d. That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

e. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

f. That Plaintiff and the Nationwide Class and New York Subclass be granted appropriate equitable or declaratory relief;

g. That the Court award to Plaintiff and the Nationwide Class and New York Subclass all costs and disbursements of this action, along with reasonable attorneys' fees, costs and expenses;

h. That the Court award pre- and post-judgment interest at the maximum legal rate; and

i. That the Court grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 14, 2023                             Respectfully Submitted,

                                           **PARKER WAICHMAN LLP**

                                           */s/ Raymond C. Silverman*
                                           Raymond C. Silverman
                                           Jerrold S. Parker
                                           Melanie H. Muhlstock
                                           6 Harbor Park Drive
                                           Port Washington, NY 11050
                                           Phone: (516) 466-6500
                                           Fax: (516) 466-6665
                                           rsilverman@yourlawyer.com
                                           jparker@yourlawyer.com
                                           mmuhlstock@yourlawyer.com