```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

MICHELLE PABON,
individually and on behalf of all
 others similarly situated,                    MEMORANDUM & ORDER
                                               23-CV-5363(EK)(ARL)
                  Plaintiff,

            -against-

HRB DIGITAL LLC and HRB TAX GROUP,
 INC.,

                  Defendants.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        In July 2023, plaintiff Michelle Pabon filed this putative class action against defendants HRB Digital LLC and HRB Tax Group, Inc. The defendants are two wholly owned subsidiaries of the tax preparation company H&R Block. Pabon alleges that the defendants unlawfully disclosed her private tax return information to "big tech companies" using "pixels," a computer program that enabled third parties to receive real-time logs of users' actions on H&R Block's website.

        The defendants now move to compel arbitration of Pabon's claims and to stay this litigation while arbitration ensues pursuant to the Federal Arbitration Act. For the following reasons, that motion is granted.

## I. Background

The following facts are drawn from Pabon's complaint and documents submitted by both parties in connection with the defendants' motion to compel arbitration.[1]

The defendants — which this order will refer to collectively as H&R Block — provide tax preparation services. Compl. ¶ 4, ECF No. 1-1. Pabon used H&R Block's website to file her federal and state income tax returns for tax years 2018 through 2022. Compl. ¶ 23. To use the website, customers had to click a box next to an acknowledgment stating:

> "I agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration. I also acknowledge that the H&R Block Privacy Notice was made available to me."

Acknowledgement Screen 2, ECF No. 18-8.

After checking the box, users then had to click the "NEXT" button at the bottom of the screen. *See* Schuessler Decl. ¶ 8, ECF No. 18-6. Pabon completed the acknowledgment process by checking the box and clicking "NEXT" to access the company's platform. *Id.* ¶ 11. Pabon writes that she "signed the [Online Services Agreement] with Defendants for the purposes of online

---

[1] On a motion to compel arbitration, "courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180 (2d Cir. 2021).

tax preparation and filing services." Pl.'s Opp'n Mem. 12, ECF No. 18-11.

As the website's acknowledgement indicates, the Online Services Agreement governs dispute resolution. In Section 11, it provides: "You and the H&R Block Parties agree that all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below." Online Servs. Agmt. § 11.1, ECF No. 18-10. Customers can opt out of the Arbitration Agreement by filling out an online form, or mailing a signed letter to H&R Block, within thirty days of acceptance. *See id.* (providing an opt-out hyperlink and a mailing address for an opt-out letter). Pabon never opted out of the agreement. Crew Decl. ¶ 4, ECF No. 18-5.

H&R Block initially sought both to dismiss and to compel arbitration. *See* Defs.' Pre-Motion Conf. Ltr., ECF No. 11. On consent of the parties, the Court directed the parties to first submit briefing on the motion to compel arbitration. *See* Docket Order dated December 5, 2023. The parties' briefing also appended documents relevant to the arbitration motion, including (but not limited to) the Online Services Agreement between Pabon and H&R Block.

3

## II. Legal Standard

Under the Federal Arbitration Act ("FAA"), arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statutory scheme enshrines a "national policy favoring arbitration." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022).[2] However, a court may order arbitration of a particular dispute "only where [it] is satisfied that the parties agreed to arbitrate *that dispute*." *Id.*

When deciding a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment," *Cooper*, 990 F.3d at 180, and draw all inferences in favor of the non-moving party. *Id.* If the court concludes that arbitration is required, the court must stay the public proceedings and compel arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 473 (2024). But "if there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

## III. Discussion

We first consider whether this dispute is arbitrable, and then evaluate Pabon's argument that the arbitration clause at issue is unconscionably broad. Pl.'s Opp'n Mem. 13. Questions of contract formation and unconscionability are both questions of law. *Shann v. Dunk*, 84 F.3d 73, 77 (2d Cir. 1996) (contract formation is a question of law); *McNally Wellman Co., a Div. of Boliden Allis v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1198 (2d Cir. 1995) ("[T]he determination of unconscionability is a question of law.").

**A.   This Dispute is Arbitrable**

"Courts consider two factors when deciding if a dispute is arbitrable: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *ExxonMobil*, 44 F.4th at 175.

1.   <u>The Parties Agreed to Arbitrate</u>

By completing the online sign-up process, Pabon formed a valid agreement to arbitrate with H&R Block. A plaintiff forms a web-based agreement to arbitrate if she (1) has "reasonably conspicuous notice" of the agreement's terms, and (2) unambiguously assents to those terms. *Edmunson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023).

Pabon had "reasonably conspicuous notice" of the arbitration provision. "Reasonable conspicuousness turns on the

5

design and content of the relevant interface." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 835 (2d Cir. 2021). Here, H&R Block's acknowledgment screen was largely uncluttered, with green, underlined hyperlinks directing the user to the full terms of the Online Services Agreement and Privacy Notice. Schuessler Decl. ¶¶ 7, 11; *see also* Acknowledgement Screen 2. The text next to the check box button also referred to the arbitration clause as a "*requirement* that any dispute be resolved through binding arbitration." *See* Acknowledgement Screen 2. (emphasis added).

The Second Circuit endorsed a similar notice in *Edmundson*. Like H&R Block's acknowledgment screen, the interface in *Edmundson* contained hyperlinks to the contractual terms that were "underlined and in a color that [stood] in sharp contrast to the color of the interfaces' backgrounds." *Edmundson*, 85 F.4th at 706. The terms were made "visible at once," without the need for the user to "scroll beyond what [was] immediately visible to find notice." *Id.* at 705. And the hyperlinks to terms appeared "directly adjacent to the button intended to manifest assent to the terms." *Id.* at 706. After considering these design elements, the Second Circuit concluded that a "reasonably prudent" internet user would have been on notice of the defendant's terms. *Id.* It therefore affirmed the

6

district court's decision to compel arbitration. *Edmundson*'s reasoning applies with similar force here.

Pabon also manifested unambiguous assent to the agreement's terms. Where notice of the web-based contract's terms is reasonably conspicuous, a plaintiff manifests clear assent by clicking "I agree" (or something similar). *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases). Here, before clicking "NEXT," Pabon clicked the box by the phrase "I agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement . . . ." *See* Schuessler Decl. ¶ 11. Thus, by completing H&R Block's sign-up process and waiving her right to opt out of arbitration after thirty days, Pabon manifested assent to the arbitration clause.

2. The Agreement Encompasses Pabon's Claims

The Arbitration Agreement covers the instant dispute. Pabon argues that she did not agree to arbitrate the specific privacy claims at issue here, because a reasonable person would only agree to arbitrate claims "*directly* relating to issues with their [tax] returns, such as filing, fees charged, and the like." Pl.'s Opp'n Mem. 16 (emphasis added). On this view, Pabon's claims relate to H&R Block's alleged disclosure of tax

7

return information, not her actual tax returns, and are therefore outside the scope of the Arbitration Agreement.

Pabon's restrictive reading runs counter to the broad language of the agreement. The words in a contract must be construed according to "what an objective, reasonable person would have understood [them] to convey." *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 127 (S.D.N.Y. 1999) (citing *Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 57 (2d Cir. 1994)). And no reasonable person would read an arbitration clause reaching "*all* disputes and claims," Online Servs. Agmt. § 11.1 (emphasis added), to cover only the narrower sub-category of dispute that Pabon posits.

Instead, to be arbitrable, Pabon's claims need only raise factual allegations that "touch matters covered by the parties' . . . agreements." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987). Pabon submitted her tax return information for the purpose of using H&R Block's services. As provided in the Online Services Agreement, Pabon's use of those services was "subject to [H&R Block's] Privacy Notice." Online Servs. Agmt. § 4.1. The Privacy Notice states that H&R Block "may disclose information as permitted by law or with customer consent to other H&R Block companies or to third

8

parties." Compl. ¶ 47.[3] The Notice then describes H&R Block's use of the "pixel tags" technology that is the crux of Pabon's complaint. *See* Silverman Decl. Ex. 2, at 33, ECF. No. 18-14. Because Pabon's factual allegations all relate to H&R Block's alleged violation of its own privacy terms, her claims "touch matters" covered by the contract between the parties and are subject to arbitration.

B.  **The Agreement is Not Unconscionable**

Pabon next argues that, despite her assent to it, the agreement is unconscionable: it is an "infinite arbitration clause" that purports to cover "all disputes and claims" between the parties, with no meaningful limits on time or subject matter. Pl.'s Opp'n Mem. 8. Because "[n]o reasonable person" would expect to arbitrate "literally every possible dispute that may arise between the parties at any time," Pabon argues that the arbitration provision should be invalidated as unconscionably broad. *Id.* at 12.

In New York, a finding of unconscionability requires a showing that the contract was both procedurally and substantively unconscionable, amounting to "some showing of an absence of meaningful choice on the part of one of the parties

---

[3] Neither party filed the Privacy Notice as an exhibit. All quotations from the Notice are taken from Pabon's complaint or from the July 2023 Congressional Report on Tax Privacy, which is attached as an exhibit to the Silverman Declaration.

9

together with contract terms which are unreasonably favorable to the other party." *McNally Wellman*, 63 F.3d at 1198 (citing *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988)).[4]

Here, Pabon faced no meaningful lack of choice. She was on notice of the terms of the agreement before she manifested her consent, and she declined to opt out within the allotted thirty days thereafter. "An agreement is not procedurally unconscionable if there is a meaningful opportunity to opt out." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 525 (E.D.N.Y. 2017) (applying New York law); *see also Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 55 (E.D.N.Y. 2017) ("The 30-day opt-out provision in the Arbitration Agreement . . . substantially negates any challenge of procedural unconscionability . . . ."). Moreover, the arbitration clause at issue is bilateral. "Even where there is some disparity in bargaining power, there is no inherent unfairness or unconscionability in an arbitration clause if both parties are bound by it and know of its existence." *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 n.5 (2d Cir. 2004).

Finally, even if New York's unconscionability doctrine *did* apply here, a state common-law rule deeming broadly worded

---

[4] The Court interprets the arbitration clause under New York law. Both parties cite to New York law in their memoranda, and neither contests its application to the current dispute.

10

arbitration clauses unconscionable would be at least in tension with the FAA.  The Supreme Court has interpreted Section 2 of the FAA to preempt state law defenses "that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  A court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot."  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

Thus, even generally applicable state law defenses, such as unconscionability, may not be deployed in a manner that would have a "disproportionate impact on arbitration agreements."  *Concepcion*, 563 U.S. at 342.  Because broad contractual provisions are routinely upheld, striking down an arbitration clause as unconscionable merely because of its breadth would apply a general contract defense "in a fashion that disfavors arbitration."  *Id.* at 341.  Supreme Court precedent cautions against taking that drastic step.

### IV.  Conclusion

For the foregoing reasons, the defendants' motion to compel arbitration is granted.  During the pendency of arbitration proceedings, litigation in this court is stayed.  *See Smith*, 601 U.S. at 473.  The parties are directed to file a

11

letter notifying the Court of the completion of the arbitration proceedings, or any other event that would affect the stay in this matter, within fifteen days of such occurrence.  In any event, the parties shall advise the Court as to the status of the arbitration proceedings no later than January 30, 2026.

       SO ORDERED.

                         /s/ Eric Komitee
                         ERIC KOMITEE
                         United States District Judge

Dated:    August 7, 2025
           Brooklyn, New York